To: Clerk of the Court
In the Matter of Biggins v. Minner, et al., 1-08-cv-4 GMS
Dated: January 16th, 2008
Re: Denial of Grievances Review through Interference and Official Abuse of Authority

**FILED**
JAN 18 2008
rescanned
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Dear Court Clerk: P. Dello,

In lieu of the above captioned case, please docket this letter as further evidence of the defendant's continual acts of deprivations of my Constitutional Rights. In this case and more specific, retaliation for addressing grievances.

Mr. Pierce, I received recently your responses denying two (2) grievances addressing institutional situations, which are under the umbrella of grievable issues. To which you have foreclosed review by interfering with the grievance process which your official authority do not rest. As to grievance no. #109828 or no. #148250 which you have registered it. I requested the opportunity to appeal IGC Cpl. Michael Dutton's refusal to grieve falsified information entered as committee chairperson in that matter as having been Michael McCreanor. Contrary to your reply, he was not present for the proceeding and any investigation (like checking the building's log-in sheet) for that day would confirm the same. Or is it you don't care?

Secondly, any investigation would have told that this particular grievance had been investigated at least three (3) other times and had been determined by the grievance committee denied because, "the property items weren't listed on my property inventory sheet when transferred" unquote. In accordance with the Delaware Dept of Corrections (DOC) Standard Operating Procedure (SOP) 4.4 (V). "The procedure require, enforceable time frames (which are never followed) for the grievance to be transmitted without alteration, interference (both performed by the IGC and you), or delay to an individual designated responsible for reviewing, receiving and investigating grievances who has the power to act" (latter omitted). Respectfully, your authority doesn't

iether allow you ability to change the grievance committee's decision on the grievance. Evidently, they accepted my version of the facts or found the process in which my property had been confiscated was flawed. Again, any investigation by you would have uncovered these facts and others. That makes your explanation, eventhough unauthorized totally unreasonable. As you should know with your years with (DOC) "<u>all property durning transfers and confiscations must be annotated, utilizing as many property forms as necessary</u>." Certainly you can't argue against that. See (DOC)(SOP)8.36., at (E) No. #1 thru #3. Because you went on to use the same listed property on a latter (two(2) weeks) disciplinary report, as cause for denying me my grievance appeal right. So, Mr. Pierce, within your authority please reinstate to me my appeal, without further interference.

My other issue concerns your unauthorized interference and denial in letting my medical grievance go through. Sir, i know that you knew you were acting without authority here. See (DOC)(SOP)4.4., at No. #5 attached hereto. In a nut-shell, "<u>the Bureau Chief of Prisons is charged with rendering a final decision</u>." You are no other security staff, official, or officer for (DOC) are legally allowed to view mine or any other medical information under this circumstance. Have you ever heard of the Patients Bill of Rights, for privacy? Or are you fimilar with the consent agreement that Mr. Danberg signed Dec 30, 2006, with the U.S. Dept of Justice (DOJ) authorizing that the State of Delaware and (DOC) would implement new policies and practices to being all State correctional facility in compliance with the National Commission on Correctional Health Care (NCCHC). Note page no. #8., at no. #11 under "privacy". And in closing, without specifically calling your medical grievance system unconstitutional. The plan of action implemented and went into affect starting Jan 1, 2007, on (DOC) say's as much, because of (DOC) security personnel involvement with medical grievances. Note page no. #9 and top two(2) sentences on page no. #10.

Mr. Pierce, as this letter clearly details, you and you subornates are undoubtly abridging mine and others Constitutional Rights willfully and with knowledge thereto. Sir, i plead to your sence of humanity and what is right, that you put a stop to these practices.

X.C: File;
Joshua W. Martin III (DAJ) Monitor;
Ruth Ann Minner, Governor; and
Carl C. Danberg, Comm. of the Dept of Corrections
Warden: Philips (DCC)

Sincerily thanks for your time,
James Arthur Biggins

5. DOC Policy 4.4 provides that medical grievances are to be submitted to the IGC, who will forward the grievance to the medical services contractual staff for review. The medical services contractual staff will attempt informal resolution of the matter. If such resolution fails, a Medical Grievance Committee ("MGC") hearing will be conducted, which hearing will be attended by the grievant and the IGC. If the matter is resolved at this stage, the case is closed; otherwise, the grievant is directed to complete the MGC Appeal Statement section of the written grievance and forward it to the IGC. The IGC in turn forwards the file to the BGO who, after review of the matter, will recommend a course of action to the Bureau Chief of Prisons. The Bureau Chief of Prisons is charged with rendering a final decision.

procedures, and practices shall be periodically evaluated to ensure that delays in inmates' timely receipt of medications and laboratory tests are prevented.

### Staffing and Training

(5) <u>Job Descriptions and Licensure</u>  The State shall ensure that all persons providing medical or mental health treatment meet applicable state licensure and/or certification requirements, and practice only within the scope of their training and licensure. The State shall establish a credentialing program that meets generally accepted professional standards, such as those required for accreditation by the National Committee for Quality Assurance.

(6) <u>Staffing</u>  The State shall maintain sufficient staffing levels of qualified medical staff and mental health professionals to provide care for inmates' serious medical and mental health needs that meets generally accepted professional standards.

(7) <u>Medical and Mental Health Staff Management</u>  The State shall ensure that a full-time medical director is responsible for the management of the medical program. The State shall also provide a director of nursing and adequate administrative medical and mental health management. In addition, the State shall ensure that a designated clinical director shall supervise inmates' mental health treatment at the Facilities. These positions may be filled either by State employees, by independent contractors retained by the State, or pursuant to the State's contract with a correctional health care vendor.

(8) <u>Medical and Mental Health Staff Training</u>  The State shall continue to ensure that all medical staff and mental health professionals are adequately trained to meet the serious medical and mental health needs of inmates. All such staff shall continue to receive documented orientation and in-service training in accordance with their job classifications, and training topics shall include suicide prevention and the identification and care of inmates with mental disorders.

(9) <u>Security Staff Training</u>  The State shall ensure that security staff are adequately trained in the identification, timely referral, and proper supervision of inmates with serious medical or mental health needs. The State shall ensure that security staff assigned to mental health units receive additional training related to the proper supervision of inmates suffering from mental illness.

### Screening and Treatment

(10) <u>Medical Screening</u>  The State shall ensure that all inmates receive an appropriate and timely medical screening by a medical staff member upon arrival at a facility. The State shall ensure that such screening enables staff to identify individuals with serious medical or mental health conditions, including acute medical needs, infectious diseases, chronic conditions, physical disabilities, mental illness, suicide risk, and drug and/or alcohol

7

withdrawal. Separate mental health screening shall be provided as described in Paragraph 34.

(11) Privacy  The State shall make reasonable efforts to ensure inmate privacy when conducting medical and mental health screening, assessments, and treatment. However, maintaining inmate privacy shall be subject to legitimate security concerns and emergency situations.

(12) Health Assessments  The State shall ensure that all inmates receive timely medical and mental health assessments. Upon intake, the State shall ensure that a medical professional identifies those persons who have chronic illness. Those persons with chronic illness shall receive a full health assessment between one (1) and seven (7) days of intake, depending on their physical condition. Persons without chronic illness should receive full health assessment within fourteen (14) days of intake. The State will ensure that inmates with chronic illnesses will be tracked in a standardized fashion. A re-admitted inmate or an inmate transferred from another facility who has received a documented full health assessment within the previous twelve (12) months, and whose receiving screening shows no change in health status, need not receive a new full medical and mental health assessment. For such inmates, medical staff and mental health professionals shall review prior records and update tests and examinations as needed.

(13) Referrals for Specialty Care  The State shall ensure that: a) inmates whose serious medical or mental health needs exceed the services available at their facility shall be referred in a timely manner to appropriate medical or mental health care professionals; b) the findings and recommendations of such professionals are tracked and documented in inmates' medical files; and c) treatment recommendations are followed as clinically indicated.

(14) Treatment or Accommodation Plans  Inmates with special needs shall have special needs plans. For inmates with special needs who have been at the facility for thirty (30) days, this shall include appropriate discharge planning. The DOJ acknowledges that for sentenced inmates with special needs, such discharge planning shall be developed in relation to the anticipated date of release.

(15) Drug and Alcohol Withdrawal  The State shall develop and implement appropriate written policies, protocols, and practices, consistent with standards of appropriate medical care, to identify, monitor, and treat inmates at risk for, or who are experiencing, drug or alcohol withdrawal. The State shall implement appropriate withdrawal and detoxification programs. Methadone maintenance programs shall be offered for pregnant inmates who were addicted to opiates and/or participating in a legitimate methadone maintenance program when they entered the Facilities.

(16) <u>Pregnant Inmates</u> The State shall develop and implement appropriate written policies and protocols for the treatment of pregnant inmates, including appropriate screening, treatment, and management of high risk pregnancies.

(17) <u>Communicable and Infectious Disease Management</u> The State shall adequately maintain statistical information regarding contagious disease screening programs and other relevant statistical data necessary to adequately identify, treat, and control infectious diseases.

(18) <u>Clinic Space and Equipment</u> The State shall ensure that all face-to-face nursing and physician examinations occur in settings that provide appropriate privacy and permit a proper clinical evaluation including an adequately-sized examination room that contains an examination table, an operable sink for hand-washing, adequate lighting, and adequate equipment, including an adequate microscope for diagnostic evaluations. The State shall submit a comprehensive action plan as described in Paragraph 65 of this Agreement identifying the specific measures the State intends to take in order to bring the Facilities into compliance with this paragraph.

### Access to Care

(19) <u>Access to Medical and Mental Health Services</u> The State shall ensure that all inmates have adequate opportunity to request and receive medical and mental health care. Appropriate medical staff shall screen all written requests for medical and/or mental health care within twenty-four (24) hours of submission, and see patients within the next 72 hours, or sooner if medically appropriate. The State shall maintain sufficient security staff to ensure that inmates requiring treatment are escorted in a timely manner to treatment areas. The State shall develop and implement a sick call policy and procedure which includes an explanation of the order in which to schedule patients, a procedure for scheduling patients, where patients should be treated, the requirements for clinical evaluations, and the maintenance of a sick call log. Treatment of inmates in response to a sick call slip should occur in a clinical setting.

(20) <u>Isolation Rounds</u> The State shall ensure that medical staff make daily sick call rounds in the isolation areas, and that nursing staff make rounds at least three times a week, to give inmates in isolation adequate opportunities to contact and discuss health and mental health concerns with medical staff and mental health professionals in a setting that affords as much privacy as security will allow.

(21) <u>Grievances</u> The State shall develop and implement a system to ensure that medical grievances are processed and addressed in a timely manner. The State shall ensure that medical grievances and written responses thereto are included in inmates' files, and that grievances and their outcomes are logged, reviewed, and analyzed on a regular basis to identify systemic issues in need of redress. The State shall develop and implement a

9

procedure for discovering and addressing all systemic problems raised through the grievance system.

### Chronic Disease Care

(22) <u>Chronic Disease Management Program</u>  The State shall develop and implement a written chronic care disease management program, consistent with generally accepted professional standards, which provides inmates suffering from chronic illnesses with appropriate diagnosis, treatment, monitoring, and continuity of care. As part of this program, the State shall maintain a registry of inmates with chronic diseases.

(23) <u>Immunizations</u>  The State shall make reasonable efforts to obtain immunization records for all juveniles who are detained at the Facilities for more than one (1) month. The State shall ensure that medical staff update immunizations for such juveniles in accordance with nationally recognized guidelines and state school admission requirements. The physicians who determine that the vaccination of a juvenile or adult inmate is medically inappropriate shall properly record such determination in the inmate's medical record. The State shall develop policies and procedures to ensure that inmates for whom influenza, pneumonia and Hepatitis A and B vaccines are medically indicated are offered these vaccines.

### Medication

(24) <u>Medication Administration</u>  The State shall ensure that all medications, including psychotropic medications, are prescribed appropriately and administered in a timely manner to adequately address the serious medical and mental health needs of inmates. The State shall ensure that inmates who are prescribed medications for chronic illnesses that are not used on a routine schedule, including inhalers for the treatment of asthma, have access to those medications as medically appropriate. The State shall develop and implement adequate policies and procedures for medication administration and adherence. The State shall ensure that the prescribing practitioner is notified if a patient misses a medication dose on three consecutive days, and shall document that notice. The State's formulary shall not unduly restrict medications. The State shall review its medication administration policies and procedures and make any appropriate revisions. The State shall ensure that medication administration records ("MARs") are appropriately completed and maintained in each inmate's medical record.

(25) <u>Continuity of Medication</u>  The State shall ensure that arriving inmates who report that they have been prescribed medications shall receive the same or comparable medication as soon as is reasonably possible, unless a medical professional determines such medication is inconsistent with generally accepted professional standards. If the inmate's reported medication is ordered discontinued or changed by a medical professional, a medical professional shall conduct a face-to-face evaluation of the inmate as medically appropriate.

I/M James Arthur Biggins
SBI# 319264    UNIT 21A-B-4
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

$00.58
JAN 17 2008
MAILED FROM ZIP CODE 19977

legal mail

C/O Clerk of the Court, Peter Dalleo
United States District Courthouse
844 King Street, Lockbox 18
Wilmington, Delaware
19801