UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES ARTHUR BIGGINS, ) | |
| ) | Case No. 008-004 GMS |
| Plaintiff, ) | JURY TRIAL DEMANDED |
| v. ) | |
| ) | |
| GOV. RUTH ANN MINNER, ET AL, ) | |
| ) | |
| Defendants. ) | |

**CORRECTIONAL MEDICAL SERVICES' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (D.I. 3)
IN RESPONSE TO COURT'S ORDER OF FEBRUARY 11, 2008 (D.I. 12)**

Defendant Correctional Medical Services, Inc. ("CMS"), by and through its undersigned counsel of record, hereby opposes Plaintiff's requests for injunctive relief found in the Complaint (D.I. 1), the Motion for Temporary Restraining Order (D.I. 3), his Declaration in Support (D.I. 4) and his letter to the Court docketed February 8, 2008 (D.I. 10). In opposition to those requests, CMS states as follows:

*Procedural Status and Claims at Issue*

1. On January 3, 2008, Plaintiff initiated the above-captioned action by filing his Complaint against CMS and 54 other defendants alleging, *inter alia*, that CMS has violated Plaintiff's civil rights by deliberate indifference to Plaintiff's alleged serious medical needs dating back to 2002. (D.I. 1). The Complaint seeks monetary and injunctive relief, specifically: "(I)mmediately stopping all unnecessary forms of current ineffective treatment on the Plaintiff that is known by the Defendants and, following course of treatment prescribed and approved by than (sic) Bureau Chief: Paul Howard, until further review can be determined, . . ." (D.I. 1 at 15).

2. Also on January 3, 2008, Plaintiff filed his Motion for Temporary Restraining Order. (D.I 3) That Motion sought the following relief:

> (T)o provide a medically appropriate course of medical treatment and physical therapy to restore and maintain as reasonable as possible adequate mobility to his spinal area in accordance with medical grievance numbers #5985 and 36763, that included proper pain management medication, medical amenities prescribed to assist plaintiff's medical conditions and physical mobility. Additionally, further medications for other known medical conditions, necessary testing to be conducted by a specialist in this field, who shall submit within 30 days of the order a medical report of those conditions that have been evaluated and diagnosed, be forwarded to the Court for future recommendations. The report shall give the Court a recommended plan of treatment, that shall include forms of medications. And refrain from all further future medical treatment with the drug "Neurontin" on the plaintiff. . . .

(D.I. 3 at 2).

3. Also on January 3, 2008, Plaintiff filed his Declaration re Motion for Temporary Restraining Order, in which he requested the Court order the following:

- Treatment consistent with the "prescribed and approved treatment plan of Dr. Brown and Paul Howard" and that such treatment include "those exact items as documented, including the pain management medication Soma. . . . or its equivalent or substitute for Chronic Spinal conditions routinely administered under the circumstances, such as Trazodone, Cyclobenzoprine or Flexeril. . . .
- (A)ll other necessary known medical medications as documented and prescribed, as needed for remaining serious medical needs. . . .
- (A)ll necessary testing to determine the exact nature of the plaintiff's spinal injuries. That shall be performed by a specialist in the field, and submit . . .a medical report . . .for future recommendations . . .
- Refrain from any future use of the drug 'Neurontin' . . . on the plaintiff".

(*See* D.I. 4 at 3)

4. On February 8, 2008, the Plaintiff wrote to the Court because he alleged he had "been without my chronic care meds for back and others since 1/10/08. Despite all the sick calls I've filed, grievances and letters I have not been seen still." (D.I. 10)

5. On February 11, 2008 the Court ordered the defendants to respond to the Plaintiff's requests for injunctive relief. (D.I. 12). On February 19, the Court granted CMS's Motion for

2

Extension of Time, allowing CMS until February 22, 2008 to file its response.  This is CMS's response to the Court's Order of February 11, 2008.

*Facts*

6. Following review of all the Plaintiff's allegations, requests for relief, the medical records and having interviewed medical personnel, it appears the following is true:

a) Plaintiff was seen, examined and diagnosed by a Dr. Brown in October 2003.  Those orders are no longer valid nearly four and one half years later. (Affidavit of Louise Desrosiers, M.D[1]., Exhibit "A" at ¶ 2)  Instead, he is in the process of being re-examined and re-assessed for consideration to other forms of treatment (*id.* at ¶ 7);

b) After four years of pain medication alone, it appears that form of treatment may not be as effective as desired.  Accordingly, doctors at CMS are considering decreased reliance on narcotics and increased reliance on physiotherapy (*id.* at ¶3);

c) Plaintiff's Ultram (pain medication) was discontinued December 4, 2007. (Exhibit "B", Doctor's Orders)  A new prescription was written for Tylenol 3, another pain medication. That medication was temporarily stopped February 5, 2008. Exhibit "C", Medication Administration Record)  The muscle relaxer Robaxin was continued, however. *Id.*  Recently, Plaintiff was written a new, five-day prescription for Vicodin; when that prescription expires, Tylenol 3 will be restarted.  (*See* Exhibit A at ¶8)

d) Plaintiff is receiving all medications prescribed for him as shown by the Medication Administration Record ("MAR"). (Exhibit C)   His claim that he has not received any chronic care medications since January 10, 2008 is untrue;

---

[1] Dr. Desrosiers is very ill at the moment and was not able to get the affidavit notarized in time for this filing deadline.  A notarized copy will be provided to the Court on receipt.

3

e) Plaintiff has not received Neurontin since that medication was discontinued for him on January 23, 2007. (Exhibit C)

f) The Plaintiff received a trial of physiotherapy in December 2007 (exhibit "D", Physiotherapy Notes) and is in the process of being scheduled to resume that treatment in order to reduce his reliance on habit-forming narcotic medication;

g) The Plaintiff underwent diagnostic testing in the form of MRI in 2005. (Exhibit "E" (MRI Report)  He is due to have follow up imaging studies but the dates of those procedures cannot be divulged for security reasons. (Exhibit A at ¶7)

7. Plaintiff has a habit of filing Sick Call Requests for complaints that have already been addressed. (*See* Exhibit "F", Sick Call Request Forms)  For example, Plaintiff was seen in chronic care on December 4, 2007.  (Exhibit "G", Chronic Care Record)  On that day, Dr. Desrosiers wrote a prescription for Tylenol 3 with codeine and Robaxin, the muscle relaxant. (Exhibit B)  Nonetheless, on December 18, Plaintiff filed a Sick Call request stating that he had "nothing to aid me as pain relief for Chronic Back conditions . . ." despite the fact that he was receiving the Tylenol and Robaxin. (Exhibits F, C).  On January 23, 2008, Plaintiff filed another Sick Call Request stating that "all medication prescription have expired" despite the fact his prescriptions had been renewed on December 4, 2007. (Exhibit F)  Reference to the MAR shows that on January 23, 2008, Plaintiff received Robaxin, Prilosec, Inderal, Tylenol #3 with Codeine, Cafergot and CJM. (Exhibit C)

*Argument*

8. "[T]he grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.' " *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 800 (3d Cir.1989) (quoting *Frank's GMC Truck Center, Inc. v. General Motors Corp.,* 847 F.2d

100, 102 (3d Cir.1988)). In ruling on a preliminary injunction, the Court must consider: 1) the likelihood of success on the merits; 2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; 3) the extent to which the defendant will suffer irreparable harm if the requested relief is granted; and 4) the public interest. *See Clean Ocean Action v. York,* 57 F.3d 328, 331 (3d Cir.1995). An injunction should only issue if all four factors favor injunctive relief. *See S & R Corp. v. Jiffy Lube Intern., Inc.,* 968 F.2d 371, 374 (3d Cir.1992). Plaintiff does not carry this burden and so the Motion should be denied.

9.      Plaintiff cannot show that he is likely to succeed on the merits. In order to do so, he must show a serious medical need and acts or omissions by CMS that indicate deliberate indifference to such need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). CMS concedes for the purpose of this Motion that the Plaintiff's back condition constitutes a "serious medical need", but CMS has not been indifferent in any manner. Plaintiff has been seen on a regular basis by physicians in sick call and in Chronic Care. In the past, his pain has been managed by pain medications (Soma, Ultram, Neurontin, Tylenol with Codeine) and muscle relaxants (Feldene, Robaxin). CMS doctors are now re-evaluating Plaintiff's course of treatment given the limited success of pain medication alone. In December, 2007, Plaintiff had three physiotherapy visits with good results. Plaintiff is being scheduled for additional radiographic studies to determine whether his condition has progressed or regressed and the results of those studies will inform his future treatment. (Exhibit A) He has recently been prescribed Vicodin and, when that prescription expires, he will re-start Tylenol 3 with Codeine. *Id.* By no means can CMS be said to have been "deliberately indifferent" to Plaintiff's care.

10.     Plaintiff is entitled to adequate medical care, not to direct the type of care he receives:

> However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is

5

> reasonable. *Poole v. Taylor,* 466 F.Supp.2d 578, 589 (D.Del.2006) (citing *Harrison v. Barkley,* 219 F.3d 132, 138-140 (2d Cir.2000)). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle,* 429 U.S. at 107, 97 S.Ct. 285. Moreover, allegations of medical malpractice are not sufficient to establish a constitutional violation. *White v. Napoleon,* 897 F.2d 103, 108-109 (3d Cir.1990); *Spruill v. Gillis,* 372 F.3d at 235. *Mere disagreement as to the appropriate treatment is insufficient to state a constitutional violation. Spruill,* 372 F.3d at 235.

*See Blackston v. Correctional Medical Services, Inc.,* --- F.Supp.2d ----, 2007 WL 2325210 * 3 (D.Del., August 16, 2007) (emphasis supplied) (granting summary judgment in favor of medical provider and against plaintiff/prisoner); accord *Pecoraro v. Correctional Medical Services,* 2007 WL 1560302 at *4 (D.N.J., May 25, 2007)[2] (stating prisoner's subjective dissatisfaction with his dental care, and not a deliberate withholding or delay of treatment as alleged in the Complaint, is not in itself indicative of deliberative indifference) (citing *Andrews v. Camden County,* 95 F.Supp.2d 217, 228 (D.N.J.2000)).

11.   Because the Plaintiff cannot demonstrate a likelihood of success on the merits, this Motion should be denied. *See S & R Corp. v. Jiffy Lube Intern., Inc.,* 968 F.2d 371, 374 (3d Cir.1992) (stating an injunction should only issue if all four factors favor injunctive relief). Nor is there any threat of irreparable harm here. Plaintiff's treatment has been ongoing and appropriate. Although he may prefer narcotic pain medications, an attempt to reduce his levels of pain through physiotherapy may be medically preferable and is within the standard of care. In any event, his course of treatment going forward will be dictated by the results of the new imaging studies and the physical and neurological examinations by his physicians.

---

[2]  Unreported decisions are included as Exhibit "H".

WHEREFORE, for the foregoing reasons, Defendant Correctional Medical Services hereby respectfully requests Plaintiff's requests for Temporary Restraining Order be denied.

                      BALICK & BALICK, LLC

                        /s/ James E. Drnec
                    James E. Drnec, Esquire (#3789)
                    711 King Street
                    Wilmington, Delaware 19801
                    302.658.4265
                    Attorneys for Defendant
                    Correctional Medical Services, Inc.

Date:   February 22, 2008