United States District Court
District of Delaware

James Arthur Biggins,
  Plaintiff,
vs.
Governor Ruth Ann Minner, et al.,
  Defendants.

C.A.No. 1-08-04 GMS

To: Cpl. Michael Dutton
Institutional Grievance Office
Delaware Correctional Center
Smyrna, Delaware 19977

Dated: February 28, 2008

FILED
MAR - 4 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Mr. Dutton,

Despite DOC/DCC and CMS's medical settlement agreement which is mandated specific policies upon you and your overseeing administrators prohibiting for 1, you or the from interfering with the conduction of all medical grievances by now! Has nonetheless, not prohibited you-all from still violating it terms.

I recently submitted medical grievance #151949 in regards to how compensation as has been approved by Bureau Chief: Kearney would be dispersed. See attached copy thereof exhibit A. While I find no logical reasoning in your reply. I find it even more ridiculous that for you to state my grievance as "Non-Grievable". Again, its already been decided and unless you can provide a policy or document(s) stating otherwise. You have no legal or administrative authority to put yourself in between, unless you are willing to face whatever legal actions your conduct may bring. As for grievance #151923 again as "Non-Grievable" seem to be determined by you without any less alone proper thought. See attached copy thereof exhibit B-1.

It is unquestionable in accordance with DOC/DCC Standard Operating Procedure 4.4, covers all institutional matters except disciplinary and classification. Arguably, you or DCC can demonstrate any policy or authorized decisions that supercedes the above qualifications for grievable issues. Nor is there any that mandates, that in order to grieve a issue it has to be currently affecting you. This is a grievance about a institutional matter regarding DCC continual practice to violate the terms of a legally binding contract, that stipulates the administration will only destribute one specific size box for storing of inmate property. See attached exhibit B-2 (1st two (2) paragraphs (underlined)). Certainly, over your period of time as a grievance chairmember, you've shown that you really don't know much in the way of policies, rules and/or regulations. Because is so your professional conduct in your decision making would be different, instead of following the company line. So since your knowledge of the intricies of your job still hasn't been formed yet. I request that you please pass my inquiry on to someone with the werewithall and knowledge to investigate if needed or make an accurate decision based upon knowledge and policies. Once again sir, its not about where im currently housed or who is illegable to receive the boxes or when. But why isn't DCC following its commitment to the contract. See attached exhibit B-3..........

Thanks sincerely for your time,
James Arthur Riggins

XC: File;
Warden's Office;
CMS Attorney James E. Drnec;
Deputy Attorney General For DCC
Ophelia M. Waters; and
United States District Court

DCC  Delaware Correctional Center  
Smyrna Landing Road  
SMYRNA DE, 19977  
Phone No. 302-653-9261

Date: 02/26/2008

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| Offender Name : BIGGINS, JAMES A | SBI# : 00319264 | Institution : DCC |
| Grievance # : 151949 | Grievance Date : 02/13/2008 | Category : Individual |
| Status : Non Grievable | Resolution Status : | Resol. Date : |
| Grievance Type: Grievance Process | Incident Date : 02/13/2008 | Incident Time : |
| IGC : Dutton, Matthew | Housing Location : Bldg 22, Upper, Tier A, Cell 4, Bottom | |

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** On 2/4/08 Bureau Chief approved my medical appeal requests in the above referenced matter, which is resolute! These requests were appropriate pain management meds (Soma) or a equal substitute, state paid for sneakers, a fitted back brace. The discontinuation of (Neurontin) as an inflammatory and a punitive award of $1,000,000 for any and all physical and future harm caused from it's administration to my system.

**Remedy Requested** : Would like just punitive compensation for harm caused, and all illegal practices being conducted by security members ceased.

### INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|

### ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| Medical Grievance : NO | Date Received by Medical Unit : |
| Investigation Sent : | Investigation Sent To : |
| Grievance Amount : | |

Page 1 of 4

Ex A

DCC Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 02/26/2008

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| Offender Name : BIGGINS, JAMES A | SBI# : 00319264 | Institution : DCC |
| Grievance # : 151923 | Grievance Date : 02/13/2008 | Category : Individual |
| Status : Non Grievable | Resolution Status : | Resol. Date : |
| Grievance Type: Miscellaneous | Incident Date : 02/13/2008 | Incident Time : |
| IGC : Dutton, Matthew | Housing Location : Bldg 22, Upper, Tier A, Cell 4, Bottom | |

## OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** In 1993, Delaware Correctional Center, did enter into a settlement agreement regarding furnishing "all" inmates with storage boxes for personal belongings, due to the lack of adequate storage facilities in inmate cells. These boxes were to be (14x20x12) deep. However, DCC neither issue boxes to all inmates. Nor do they fit the agreement's standard! These boxes are (12x18x12 deep), two inches shorter in width and two inches shorter in length. See William Elliot Hick, de vs. Snyder, et al (1993).

**Remedy Requested :** Would like an investigation into why boxes are not being dispensed to all inmates and why the boxes do not appropriately fit the agreement's protocol standards!

### INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

## ADDITIONAL GRIEVANCE INFORMATION

Medical Grievance : NO             Date Received by Medical Unit :

Investigation Sent :                Investigation Sent To :

Grievance Amount :

Ex B-1

**The ISTHMUS, August 1998**    **Page 7**

# DCC Grievance Procedure Is A Paper Tiger
by William F. Manchester

Recently, the DCC NAACP branch issued a report detailing the deficiencies in the current inmate grievance procedure, Bureau of Prison (BOP) Procedure 4.4. That report, in condensed form, is carried in another article in *The Isthmus*, but for now, I would simply like to recount my own experiences with the current procedure.

In the fall of 1996, I filed a grievance concerning the dimensions of the two cardboard boxes in which inmates are expected to fill all of their personal effects and commissary. My contention was:

- That the boxes inmates are actually given are only 3,840 cubic inches in true size, whereas the housing rules call for boxes with 6,720 cubic inches of space.
- That it is impossible to fit all of the personal items, etc. into the two cardboard boxes, and
- That it is fundamentally unfair to write inmates up for not having all of their stuff in the two boxes when it is physically impossible to do so.

The housing rules call for cardboard boxes that are each 14"x20"x12" or 3,360 cubic inches in size. The combined number of cubic inches for two boxes is 6,720. However, the boxes that are actually issued are each 16"x10"x12" or 1,920 cubic inches each or 2,840 for two. The difference between the two sets of boxes is a net loss of 2,880 cubic inches of personal space for belongings. Inmates in situations where they feel the need for additional security and purchase a metal box from commissary are short-changed even more for the dimensions of the metal box, i.e., 20"x15"x13" or 3,900 cubic inches is 2,820 cubic inches less space than the two cardboard boxes called for in the rules. The graph below illustrates the different dimensions.

The grievance was "heard" in June 1997 by the Resident Grievance Resolution Committee (RGRC) chaired by RGRC Chairperson Sgt. Doreen Williams. At the hearing, the Committee was shown the disparity between the size called for in the housing rules and the actual boxes being issued to inmates. My suggestion was to either give inmates boxes in the size called for in the rules or to change the rules to allow a sufficient number of boxes that would hold all personal items and commissary. However, before the Committee could vote, Sgt. Williams was called away to attend other duties. It is now July 1998, and I have yet to receive the decision of the RGRC or any other official.

In May-June of 1997, I filed a grievance concerning the repairs to the S-1 Building's heating/air conditioning unit (HVAC) which were leaving entire tiers without any fresh air or heat in the winter months. One of my suggestions was that the administration install heavy metal-grated doors such as those that are found on the west-end door of the Education Building. In that way, the DOC could stay in compliance with the settlement agreement reached in *Dickerson v. Dupont* lawsuit in which the DOC agreed to provide a minimum of 10 cubic feet per minute of fresh air in each cell.

That grievance was "heard" at the same June 1997 hearing, and although the inmate building representatives (George Gray and Charles Beebe) agreed with my position, RGRC Chairperson, Sgt. Williams was called away before a decision could be reached. I have yet to receive the RGC's decision or the decision of any other official on the matter.

At the same June 1997 RGRC hearing, my grievance concerning DOC/DCC regulations requiring inmates to pay for photocopies of legal services and medical services, as well as any future regulations that may require payment for room and board, among other things, RGRC Chairperson, Sgt. Williams refused to allow the Committee to vote on the grievance. Instead, she said Mrs. Francine Kobus, the Legal Services Administrator, had to look at the grievance first. When I asked what Mrs. Kobus had to do with the grievance, I got no response as Sgt. Williams abruptly left at that moment. I have yet to receive the RGC's decision on this grievance, despite repeated oral and written requests to Sgt. Williams.

In January 1998, I filed a grievance to either allow inmates to keep a rag in their cells for cleaning their cells in or to have clean, dry rags available for distribution by correctional officers upon demand from inmates wishing to clean their cells. I, myself, had been written up for having a cleaning rag in my cell, and later reprimanded orally for having dust on my television set.

At the May 1998 RGRC hearing, inmate building representatives, Japhis Lampkins and Victor Sanchez, orally agreed with my grievance, and I left the hearing with the impression that the vote would be favorable. Later that day Lampkins told me that Sgt. Williams announced that the grievance would be denied. But, be that as it may, I never received the actual RGRC decision which unanimously denied the grievance on the grounds that, "The action requested by the grievant is unreasonable and without merit." I did not learn of the RGRC decision until June 8, 1998, when I received the Warden's decision denying the grievance and upholding the RGRC decision (which is how the process is planned to work).

Mr. Richard E. Seifert, the Bureau Grievance Officer (BGO), and Mr. Paul W. Howard, Chief, Bureau of Prisons, upheld the RGC's and Deputy Warden's denial of the grievance stating: "First, the rules on inmate allowable items are quite specific. Contraband and any form will be confiscated. These rules are created by the institution's Executive Committee who share the responsibility for managing a safe, efficient facility. The great majority of their deliberations are based on real experience. Second, since your Grievance Appeal statement offers no additional facts to reverse the decision rendered, we concur with both the RGC and the Deputy Warden. Accordingly, there is no further issue to mediate nor Outside Review necessary as provided by BOP Procedure 4.4 entitled 'Inmate Grievance Procedure', Level III appeals." In essence, what they were saying, and what they reiterate in practically all of their decisions, is that they see no inherent contradictions or unfairness in having a rule that requires inmates to clean their cells and another rule that denies them the means to comply with the former rule. No small wonder that they did not want their decision mediated by "Outside Review." Stated more broadly, they are saying that the BOP 4.4 Grievance Procedure is a toothless tiger when it comes to challenging disciplinary rules, either on their face or in their application, because the Executive Committee, which created the rules in the first place, has absolute discretion, and its final decisions on such matters are immutable and unassailable. This type of decision from the BGO and Bureau Chief is stereotypical of the decisions being handed down on other grievances, and is the norm, rather than the exception.

What can be deduced or gleaned from these events? Well, what is first apparent is that, whenever a meritorious grievance with far ranging implications is presented, the tactic of choice is to delay hearing the grievance and/or to "deep six" it until either the grievant forgets about it, or ;until it is lost in the paper shuffle as the grievant is bandied about from one official/officer to another.

Grievances dealing with disciplinary rules *per se* and their application should not be filed, as the will of the Executive Committee is etched in stone and will not be altered. Put differently, there is no point in challenging disciplinary rules on the grounds of unfairness, inherent contradictions or ambiguities, or for just being nonsensical—the Executive Committee has unfettered discretion to make such decisions.

Review by persons outside of the DOC is effectively non-existent, and even if allowed, would be virtually meaningless, as the DOC officials, not the outside reviewer, determines what will and will not be reviewed. This lack of a neutral and detached observer and advisor almost guarantees involvement of the judicial process—a result counterintuitive to that intended by the grievance procedure and the intent of the General Assembly.

There is one other deficiency that deserves mention. I will leave the burden of detailed criticism to the NAACP, and that is the "informal" part of the grievance process. What this comes down to in actual practice is a one-on-one confrontation between the inmate grievant and a Lieutenant (or higher ranked correctional official), usually at a time and place out of sight and earshot of other inmates and without any inmate representatives or witnesses being present. The inescapable effect of this part of the process is to chill and intimidate the inmate from pursuing the grievance to completion. While the theory and purported intent is sound, that is, of resolving the grievance before the process becomes more complex, it ignores the reality of the fact that face-to-face encounters between a solitary inmate and one or more correctional officers subject the inmate to undue pressure to abandon the grievance. While this has not occurred with me, I can easily envision it happening with other inmates.

In any event, in my opinion, the NAACP's suggestion that we should return to the "old", 1992 version of BOP 4.4 and to try to work out the kinks in it is a sound one, and the only one that will realistically provide an administrative remedy that will lessen the tension in DCC and the burden on the courts—not that any DOC officials give a hoot about my opinion.



Synopsis of NAACP Report on Inmate Grievance Procedure, page 9

Box Size Comparison (Cubic Inches)

ExB-2

DCC  Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 02/26/2008

## GRIEVANCE INFORMATION - IGC

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| Offender Name : BIGGINS, JAMES A | SBI# : 00319264 | Institution : DCC |
| Grievance # : 151923 | Grievance Date : 02/13/2008 | Category : Individual |
| Status : Non Grievable | Resolution Status : | Inmate Status : |
| Grievance Type: Miscellaneous | Incident Date : 02/13/2008 | Incident Time : |
| IGC : Dutton, Matthew | Housing Location : Bldg 22, Upper, Tier A, Cell 4, Bottom | |

### IGC

Medical Provider:        Date Assigned

Comments:

This grievance returned because: Requests are not processed through the grievance procedure. Foot lockers and boxes are not authorized in the MHU.

[ ] Forward to MGC        [ ] Forward to Medical Provider        [ ] Warden Notified

[ ] Forward to RGC        Date Forwarded to MGC :

[ ] Offender Signature Captured        Date Offender Signed        :

Ex B-3

I/M James Anthony Brown
SBI# 319269    UNIT #W-A-11
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

Legal mail

C/O Clerk of the Court
United States District Court House
844 North King Street, Lock box 18
Wilmington, Delaware
19801