United States District Court
District of Delaware

James Arthur Biggins,
Plaintiff,

vs.

Governor Ruth Ann Minner, Et al.,
Defendants.

C.A.No.1-08-04 GMS

To the Honorable Gregory M. Sleet
Judges Chambers
United States District CourtHouse
844 North King Street, Lockbox 19
Wilmington, Delaware 19801

Your Honor:

In view of the pending Motion for Temporary Restraining Order and the recently filed signed affidavit by Dr. Louise Desrosier, regarding her medical care towards what she has deemed as adequate medical treatment regarding my chronic care.

I am submitting to the Honorable Court my affidavit reflecting recent events since her affidavit signed has been submitted. While maintaining that both defendant's Delaware Department of Corrections (DOC) and Correctional Medical Services (CMS) responses should be stricken for "failing to file in the required time limitations", and "filing past limitations period with the court's grant". Because I have yet to recieve the Court's grants of filing Extension, please provide me with one of each.

March , 2008
XC: File
James E. Drnec, Esq.
Ophelia M. Waters, Esq.

Sincerely,
James Arthur Biggins

United States District Court
District of Delaware

James Arthur Biggins,
Plaintiff,

vs.

Governor Ruth Ann Minner, et al,
Defendants

C.A.No.1-08-04 GMS

### Affidavit Of James A. Biggins, Plaintiff

State of Delaware
County of New Castle

I, James A Biggins, being solemnly sworn hereby aver as follows:

1. On March 3, 2008, I was called out from my housing to go see Dr. Desrosier at around 2:38pm. Plaintiff learned that he was also being evaluated under (CMS's) annual review.

2. As Dr. Desrosier begin her examination, she showed little concern regarding my medical health and never ask about what relief her last prescribed medicines had on me which seem especially out of place considering her now known knowledge of my civil action and that i had personally wrote her a complaint regarding her prescription of Parafone Forte. That cause adverse side-effects for me by causing a blood stool and irregular frequent bowl movements constantly when taken

3. I again informed her of the medication reactions to my system. She still didn't show no concern and re-proscribed "Parafone Forte" for me again.

4. Because Dr. Desrosier lack of professional judgment and moral concern, I still must suffer daily due to my chronic back pain. Because I cannot take the muscle relaxer "Parafone Forte" due to the side-affects it causes, and doesn't interact with the "Tylenol 3" to relieve pain.

2.

---

1. Due to Dr. Desrosier emergency treatment call on February 22, 2008, this was Dr. Desrosier's 10 day re-evasution to see how the medications "Vicodin" and "Parafone Forte" had done.

5. Dr. Desrosier's assertion that she is one of only several treating physicians is incorrect, and as my medical history indicates. She is the only treating physicians I've had in the past 11 months. 3. Despite this factor, she has failed continuously to leaven her patient medical history, and make unreasonable medication choices repeatedly as is demonstrated by the evidence.

6. I find it quite disturbing that Dr. Desrosier or (CMS) in general has categorized the changes in my medications for medical treatment for chronic back pain as an "assessment routinely done every four years. See Dr. Desrosier's Affidavit at N. 2 ... Especially since in evaluation conducted in June 2006, and placed in the <u>United States Department of Justice</u> memorandum of agreement with the defendant's on December 30, 2006. Do not have an acceptable standard of care as recognized by the National Commission on Correctional Health Care (NCCHC). In addition, see Action Plan exhibits N. #22 - Chronic Disease Management Program p. #10, and N. #25 - Continuity of Medication p. #10.

7. Plantiff has never been addicted to any form of medication, and the defendant's (CMS) must confess as is determined by my medical history throughout the course of medical treatment by (CMS) or those before them for medical treatment for chronic back pain. And has only been prescribed in the last 11½ years one narcotic (Tylonol 3), that I only begun taking since January 3, 2007. See (CMS) sealed exhibit medical medication records. "Feldene" is a muscle relaxer, "Neurontin" is a muscle relaxer, "Robaxin" is a muscle relaxer, "Ultram" is a muscle relaxer and all are non-narcotic.

8. Interesting the only other medication the defendant mentions "Soma" is actually

2. May the Court be mindful that Tylonol 3 is a narcotic indeed, but its effectiveness do not acheive long term effectiveness as a pain reliever remedying chronic back pain daily. In <u>Riley</u>, the Third Circuit Court Appeals ruled that "pervasive risk of harm in violation of prisoner's 8th Amendment rights is actionable under §1983" 1] 777 F.2d 143, 147-48 (3d Cir. 1985). 3

1. Dr. Desrosier is suggesting that her supervising officials as providing patient medical care. Their participation is limited to agreeing or disagreeing with her prescription orders or treatment plans if called on. 4. The Court should further note that due to her medical practices, medications are routinely discontinued or changed without my knowledge because she doesn't have the face-to-face meeting, or notify you before or after

a pain reliever, but Leo is not a Narcotic.

9. Although defendant's (CMS) continue to stress the point that my best interest is at heart, the evidence continue to mount against them. See additional Action Plan exhibit N #22(A) on p.#21.

10. In the words of (CMS) "the course of treatment has had limited success, and it was determined to try to reduce his dependence on narcotic medications and try other options, such as physio therapy." Is there way of saying we can treat him cheaper, than with medications, is not condusive (NCCHC) requirements or Action Plan exhibit N #24 (d) Formulary Shall Not Unduly Restrict Medications on p #24.

11. The defendants (CMS) knows what works and what don't. As recorded "Soma" and "Ultram" or "Tylonel 3" and "Ultram" works. Ironically, the only medications that has been proven to be effective for treating my chronic back pain have both been discontinued.

24(d) Formulary Shall Not Unduly Restrict Medication's:

1. The DOC will develope or revise formulary policies which reflect the understanding that formulary developed will not unduly restrict medications

2. Additions and deletions from formulary will be made by vote of the committee and reason's for addition or deletion of any particular medication will be noted in the minutes of the committee. (Since (CMS) uses this argument, assumingly as reason's for discontinuations of the medications (non-narcotic) to the plaintiff), it should be required that they submit a written answer to why these medications in particular has been deleted, with copies of committee minutes thereof.

---

she makes her decisions. More on this issue can be viewed under Affiant N. #6. Noting that even when the medical dept or Dr. Desrosiers is written a complaint, rearly is a response recieved. And medical grievances as they are, are rarely resolved under 6 months to a year. 4. The plaintiff has already entered evidence that this drug is produce to treat Epilepsy. The F.D.A did not release "Neurontin" for treating pain or as a muscle relaxer. Defendants prior practice of administering it as such was in violation of the law. It side-affects are increased potentials for suicide and liver and kidney damage. 5. An easier or less efficacious form of treatment by doctor is "deliberate indifference" Williams, Id. 508 F.2d 541, 544 (2d Cir. 1974), Lanzaro, 834 F.2d at 347.

3

3. Non-formulary request must be submitted to the vendor's medical director for approval.

4. Reasons for denial must be documented and alternatives noted on request forms.

Your Honor, the United States Supreme Court has declared that "The Eighth Amendments protects against conditions that pose an unreasonable risk of future harm, as well as those that are currently causing harm. Helling, 509 U.S. at 33 (1993). Thus, I contend that I have demonstrated that the defendant's continual failure to properly treat my chronic back condition results in me suffering unnecessary and wanton infliction of pain. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002); Rouse v. Plantier, 182 F.3d at 197 (3d Cir. 1999); and Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003).

Wherefore, plaintiff's request must be granted without further delay.

Dated: March 6, 2008

James Arthur Biggins #319264
Delaware Correctional Center
1181 Paddock Road, P.O. Box 500
Smyrna, Delaware 19977

Dated: March 6, 2008

Notary

---

6. Although formula's can be discontinued or deleted, but obviously they are still obtainable if ordered by treating physician and patient needs it. This especially concerning considering medications being both prescribed and approved under a medical review. Plaintiff still has not recieve any more therapy which 4 can only work toward muscle tention.

## Delaware Department of Correction
## Health Care Services Fee Sheet

**Inmate Name** _____   **SBI #** _____

(Last, First MI)

**Facility** _____   **Date** _____

    ___ Chargeable Visit                                       $4.00

    ___ Non Chargeable Visit                                   -0-

    ___ Medication Handling Fee ($2.00 X _____)        $_____

**Total Amount Charged To Inmate Account**            $_____

**Health Care Staff Signature:** _____

I CERTIFY BY MY SIGNATURE THAT I HAVE RECEIVED THE SERVICES DESCRIBED ABOVE.

**Inmate Signature:** _____   **Date:** _____

1) *Witness Signature: _____   **Date:** _____

2) *Witness Signature: _____   **Date:** _____

The fee for services rendered will be deducted from your inmate account even if the amount deducted generates a negative balance. Any funds received by you will first be applied to any negative balance. Any negative balance remaining on your account when you are released will remain active for three (3) years after the date of release. Should you return to Delaware Department of Correction as an inmate within that three (3) year period, the negative balance will be applied to your inmate account on your new commitment.

Distribution:
Original: Facility Business Office    Posted/Entered by_____ Date_____
Copy:    Inmate Medical Record (yellow)
          Inmate (pink)

*Only needed if inmate refuses or is unable to sign.
**FORM #: 621**

3 part NCR

(C:Copay.96:Form.4)                                                 Turn Over →

procedure for discovering and addressing all systemic problems raised through the grievance system.

### Chronic Disease Care

(22) <u>Chronic Disease Management Program</u>  The State shall develop and implement a written chronic care disease management program, consistent with generally accepted professional standards, which provides inmates suffering from chronic illnesses with appropriate diagnosis, treatment, monitoring, and continuity of care. As part of this program, the State shall maintain a registry of inmates with chronic diseases.

(23) <u>Immunizations</u>  The State shall make reasonable efforts to obtain immunization records for all juveniles who are detained at the Facilities for more than one (1) month. The State shall ensure that medical staff update immunizations for such juveniles in accordance with nationally recognized guidelines and state school admission requirements. The physicians who determine that the vaccination of a juvenile or adult inmate is medically inappropriate shall properly record such determination in the inmate's medical record. The State shall develop policies and procedures to ensure that inmates for whom influenza, pneumonia and Hepatitis A and B vaccines are medically indicated are offered these vaccines.

### Medication

(24) <u>Medication Administration</u>  The State shall ensure that all medications, including psychotropic medications, are prescribed appropriately and administered in a timely manner to adequately address the serious medical and mental health needs of inmates. The State shall ensure that inmates who are prescribed medications for chronic illnesses that are not used on a routine schedule, including inhalers for the treatment of asthma, have access to those medications as medically appropriate. The State shall develop and implement adequate policies and procedures for medication administration and adherence.  The State shall ensure that the prescribing practitioner is notified if a patient misses a medication dose on three consecutive days, and shall document that notice. The State's formulary shall not unduly restrict medications. The State shall review its medication administration policies and procedures and make any appropriate revisions. The State shall ensure that medication administration records ("MARs") are appropriately completed and maintained in each inmate's medical record.

(25) <u>Continuity of Medication</u>  The State shall ensure that arriving inmates who report that they have been prescribed medications shall receive the same or comparable medication as soon as is reasonably possible, unless a medical professional determines such medication is inconsistent with generally accepted professional standards. If the inmate's reported medication is ordered discontinued or changed by a medical professional, a medical professional shall conduct a face-to-face evaluation of the inmate as medically appropriate.

Timeline for Completion: 12/30/07

*Chronic Disease Care*

**22.    Chronic Disease Management Program**

The Health Services Director, the Quality Improvement Administrator, the audit nurses, and the medical vendor staff will share responsibility for assuring compliance with this provision.

### 22a.    Develop and Implement Chronic Care Disease Management Program

- The DOC will develop or revise and implement a Chronic Care Disease Management Program to identify and track inmates with chronic conditions.
- The DOC plans to implement a Chronic Care Disease Management Program that is driven by the level of control achieved for any given chronic condition.
    - For example, the frequency of chronic care appointments will be based on degree of control of the illness.
    - Each chronic care patient will be seen at least quarterly.
    - Those under poor control will have more frequent visits to the provider for appropriate evaluation and treatment.
- Appropriate diagnosis, treatment, monitoring and continuity of care are important components of the Chronic Care Disease Management Program and will be tracked accordingly.
- Quality improvement audits will be conducted using the DOC audit tool every two months for the first two quarters beginning July 2007 and every three months for the following quarters.

Timeline for Completion: 12/30/07

### 22b.    Maintain Registry of Inmates with Chronic Disease

- DOC will use the DACS system and a manual registry to track those inmates who at intake, or on subsequent occasions, are identified as having a chronic condition.
- Compliance with this requirement will be audited every two months for the first two quarters beginning July 2007 and every three months for the following quarters.

Timeline for Completion: 12/30/07

**23.    Immunizations**

21

### 24c. Policies and Procedures Regarding Missed Doses

- DOC will develop or revise and implement policies to ensure that the prescribing practitioner is notified if a patient misses doses of a particular medication on three consecutive days.
- Notice to the provider shall be documented, according to policy, in the medical chart.
- Compliance with this requirement will be audited every two months for the first two quarters beginning July 2007 and every three months for the following quarters.

Timeline for Completion:

Policy development: 07/01/07
Implementation date: 08/01/07

### 24d. Formulary Shall Not Unduly Restrict Medications

- The DOC will develop or revise formulary policies which reflect the understanding that the formulary developed will not unduly restrict medications.
- Additions and deletions from the formulary will be made by vote of the committee and reasons for the addition or deletion of any particular medication will be noted in the minutes of the committee.
- Non-formulary requests must be submitted to the vendor's medical director for approval.
- Reasons for denial must be documented and alternatives noted on request forms.

Timeline for Completion:

Policies: 07/01/07
Training: 08/01/07
Implementation date: 10/30/07

### 24e. MARs Appropriately Completed and Maintained

- The DOC is currently using a MAR in the unified chart.
- The DOC will develop or revise policies to require that medications prescribed are noted in a MAR, which will be a part of each inmate's medical file.
- DOC policies will require documentation in the MAR that is consistent with standard practices.
- Compliance with DOC policy will be audited every two months for the first two quarters beginning July 2007 and every three subsequently.

Timeline for Completion: