In The United States District Court For The District of Delaware

James Arthur Biggins,
            Plaintiff,
    vs.
Governor Ruth Ann Minner, et al.,
            Defendants

Civil Action No. 08-04-GMS

FILED
MAY 20 2008
U.S. DISTRICT COURT

## Plaintiff's Motion For Reconsideration of Case And Temporary Restraining Order

Comes the Plaintiff, pro se, James Arthur Biggins, moves this Honorable Court for reconsideration of case at bar and order for temporary restraining order. In support of this motion the following is being advanced:

1. On April 15, 2008, the court issued a memorandum order denying plaintiff request in this case for a temporary restraining order, and was received on April 18, 2008.

2. On April 16, 2008, almost simultaneously the court dismissed this instant case as frivolous and failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §1915(e)(2)(B) and §1915A(b)(1) citing amendment complaint would be futile, and was received April 22, 2008.

### Scope of Review

Granting a motion for reconsideration is a matter within the district court's discretion, but such a motion should be granted only where such facts or legal authority were presented but overlooked DeLong Corp. v. Raymond Int'l Inc., 622 F.2d 1135, 1140 (3d Cir. 1980); Williams v. Sullivan, 818 F.Supp. 92, 93 (D.N.J. 1993) (A party seeking reconsideration must show more than a disagreement with the court's decision, and recapitulation of cases and arguments consideration by the court before the court rendering its original decision fails to carry the moving party's burden); Pannav Firstrust Sav. Bank, 760 F.Supp. 432, 435 (D.N.J. 1991) (internal citations omitted). Instead, the party must show in seeking reconsideration at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available; (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

Plaintiff prays the latter in addition to the court overlooking "despositive factual matters and controlling decisions of law. Rouse v. Pontice, 997 F.Supp. 575, 578 (D.N.J. 1998); Starr v. J.C.I. Data Processing, Inc., 767 F.Supp. 633 (D.N.J. 1991) see also District Court Rule 2.1(i) of civil procedures

## I. Background

The plaintiff has been under the care of the Delaware Dept. of Correction (DOC) since November 21, 1997, housed at the Delaware Correctional Center (DCC), Smyrna, Delaware 19977. The Court initially found grounds to grant plaintiff in forma pauperis motion and complaint/affidavit with memorandum under "imminent danger" by a prisoner with three or more civil actions that had been dismissed for failure to state a claim upon relief can be granted, frivolous, or malicous on February 11, 2008, under temporary restraining order with motion for an immediate injunctive relief request for specific adequate medical care for chronic care needs (D.I. 3, 4, 10) pursuant to 42 U.S.C. §1983.[1] In doing so, the Court accepted plaintiff's allegations as true. The Court has recently screened plaintiff's complaint and memorandum of law and amendments pursuant to 28 U.S.C. §1915 and §1915A.

Plaintiff complaint alleges multiple violations against fifty-eight known defendants at this time.[2] The Court is ask to take note that the plaintiff based his action at this time, in the recent U.S. Supreme Court precedent of Erickson v. Pardus, ___ U.S. ___, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)[3] which now holds "State prisoner's pro se §1983 complaint, alleging that termination of his treatment for hepatitis C was endangering his life and that he was still in need of treatment for the disease, gave prison official's fair notice of prisoner's claim of substantial harm, supportive of a claim of deliberate indifference to his serious medical needs, in violation of Eighth Amendment. U.S.C.A. Const. Amend. 8.; 42 U.S.C.A. §1983; Fed Rules Civil Pro. Rule 8(a)(2), 28 U.S.C. A...... Id. at 2200 (copy of case attached for review).

In this instant case, plaintiff has multiple chronic and non-chronic medical conditions, acid reflux disease, bleeding ulcers, migraine headaches, spinal sclorosis, and an additional spinal condition caused by a non-mendable lower-left fractured vertibra. Clarification is being made here as to the Court's misreading of plaintiff history given his illneses, to which is the crux of the plaintiff's claims demonstrating "continual non interruption of deliberate indifference to serious medical needs of the plaintiff", interference/interruption with contract, malfesance, nonfesance, misfesance, fraud, breach of fiducary duty, breach of contract, RICO violations, discriminotary medical treatment, conscious deliberate intentional delays of medical treatment for non-medical reasons, conscious intentional interference with medical judgments by medical and non-medical persons, conscious and deliberate acts in failing to carry out medical orders (finalized by Bureau of Prison, Bureau Chief), intentional capricious and abritrary policy making denying access to quality medical care, negligence,

---

1. The Court is reminded that the plaintiff's action is based also under several additional state and federal Constitutional statutes and laws. See complaint (Mem. at p.p. 1-3). 2. As to entry's as John and Jane Does are pending discovery. 3. See (Mem at p. 3., N. 6).

2

torts of Battery, medical malpractice and conspiracy. These claims are directly as the result or association with the defendants, et al., individual or official capacities. See (MEM at.p 4) cited under Facts from p.3, at N. 1-8. In connection with exhibits are certains grievances to illustrate claims being made in association with plaintiff's claims under "deliberate indifference" to serious medical needs by not having: (1) adequately trained medical personnel, (2) lack of x-ray machine or technicians, (3) adequate medical record keeping (enabling medical personnel to be able to properly monitor patients with chronic issues appointment scheduling or medication orders), (4) lack of proper communications between medical and (DOC/DCC) administrative personnel on issues involving patients medications, aminities, devices and forms of treatment that may need official approval (MEM at.p 2 (top paragraph). Plaintiff goes on to discuss when he was first prescribed an affective migraine med after 11 years, and that his Sickle-Cell treatment has been almost non-existing for more than half of his incarceration. That plaintiff has only received Multi-Vitamins and currently is not being given nothing. Despite symptoms of high fevers, weakness and at times total lost of physical strength in mobility and uses his knowledge and experiences with suffering with this disease from birth how best to help himself. Despite over the years being told depending on (DOC/DCC) medical contractor medical personnel attitude, knowledge or experience. He's been informed everything from he did'nt have the disease, wasn't dictated in his medical history although it's been there all along, to just not carrying. While persons written to are mentioned in and through the grievances associated with illustrating the defendants practices, knowledge, acquaintance and conduct in their individual and official capacities. There is no letters entered in this complaint as to 2002, 2003, 2004 or 2006. See ex. A- mentions having written deputy bureau chief Kathy English about med.dir. Dr.Alie, Dr.

4. Plaintiff's statements made at (MEM p.5) regarding medical treatment, was not establishing a medical claim surrounding treatment for Sickle-Cell received, but is to illustrate overall inadequate medical treatment see (MEM p.2 footnote N. 2) covering also (DOC/DCC) and (CMS) lack to provide plaintiff with an adequate "special needs diet" for chronic health care. Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed. 2d 811 (1994); Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996); French v. Owens, 777 F.2d 1250, 1255 (7th Cir 1985); Ramos v. Lamm, 639 F.2d 559, 570-71 (10th Cir. 1980); Campbell v. Cauthron, 623 F.2d 503, 508 (8th Cir. 1980); Estelle v. Gamble, 429 U.S. at 106; Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993). Having been medically approved and prescribed a "special needs diet" 85% of food still being forced to eat contains salt, sodium, spices, etc. That are not recommended for persons with ulcers and acid reflux disease. It goes on to discuss DOC Food Serv's Div interference with medical diet by cutting it off if a inmate do not eat 18 of 21 meals served per week. This policy has no legitimate penological interest, it takes less food to feed "special need" inmates than the regular prison population. Just one reason.

2

Aracdi, and nurse practitioner: Thomas Chucks continual denial of doctor prescribed and bureau of prisons, bureau chief finalizing approved medical treatment for a inmate.[5]

The record documents the plaintiff's spinal or back conditions (1) degenerate spin disease, and (2) non-mendable lower left herniated disc with a protruding bulge attached. What is not argued is these conditions or that they have an effect on plaintiff daily life, due mostly to constant discomfort and back pain. Dean v. Coughlin, 632 F. Supp at 403-404 (S.D.N.Y. 1982)("Even if prison officials give inmates access to the treatment, they may still be deliberately indifferent to inmates needs if they fail to provide prescribed treatment"). It follows that (1) outright refusal of any treatment for a degenerate condition that tends to cause acute infection and pain if left untreated and (2) imposition of a serious unreasonable condition on such treatment, both constitute deliberate indifference on the part of prison officials[6]. Id. Having now demonstrated what extent ex A,B, and C noting page in concert to it is (DOC/DCC) Grievances Policy see N.3 for medical grievances.

The Court has stated that plaintiff exhibits of the defendants agreement with the United States Dept of Justice (U.S.D.O.J.) to implement plans to conduct new policys for administering adequate health, dental, and mental health care to Delaware's population of inmates, known as the Action Plan, should not be admitted as evidence against the defendants citing the agree-

---

5. "A serious medical need is a need diagnosed by a physician, that the physician believes to require medical treatment, or a need that is "so obvious that a lay person would easily recognize the necessity for a doctor's attention". In this case both phases were fulfilled. Jackson v. Fauver, 334 F.Supp.2d at 706 (D.N.J. 2004) (quoting Monmouth Cnty.Corr.Inst.Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987))..... 6. Yet four years later and two additional bureau chief medical approvals, plaintiff is still not recieving appropriate medical care. See (Mem ex C, plaintiff's 2008 exhibit will be added hereon. Exhibit D-1 illustrate those medical persons involved with my medical care on that day, concluding with D-2. Exhibit E-1 (same) concluding with E-2. Exhibit F, is sick-call submitted regarding needing chronic care meds. Note that the sick-call ends with plaintiff's request not to be attended by medical personnel Bailey or Chucks, because they both refused to refer to treatment plan (incidentally by nurse practitioner: Bailey). Further noting that she was the first to prescribe for treatment on July 5, 2002. Using her medical experience and common sense, that there had to be a problem for me, even though at that time no x-rays had revealed because i had been to the hospital infirmary 3 times in 11 days, June 25, 2002, and July 1, 2002 was apart of that time period.

4.

ment terms set thereby. However, plaintiff does not feel that their agreement has no bearing on him as a private party. In Beck, the Third Circuit held in a similar case where plaintiff entered five civilian complaints against an officer charged with using excessive force, as a pattern showing violent and inappropriate behavior. That "offering a series of of actual written civilian complaints was a matter for the jury to decide the relevance of evidence of a similar nature." Id. 89 F.3d at 973 (3d Cir. 1996); A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr., 372 F.2d 572, 582 (2004) ("once evidentiary proof is adduced, the issue of proximate cause is best left to the trier of facts").

## II. Standard of Review

A court may dismiss a complaint, at anytime, if the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seek monetary relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). 28 U.S.C. §1915(e)(2)(B); 28 U.S.C. §1915A(b)(1).

However, plaintiff do not believe that dismissal under these grounds are reasonable. One, the statute raises mixed questions of law. The provisions are limited in authority in forma pauperis plaintiff's, at least two other provisions of the PLRA contained similar dismissal requirements for prisoners seeking relief from "a governmental entity or its officers or employee." PLRA §805 (a) codified at 28 U.S.C. §1915 A, provided a screening process that separates cognized claims from those lacking merit. 28 U.S.C. §1915 A, targets claims that are "frivolous, malicious, or fail to state a claim upon which relief may be granted, or.... seeks monetary relief from the defendants who are immune from such relief." 28 U.S.C. §1915A. Similarly, §803(d), codified in part at 42 U.S.C. §1997(e)(c)(1), prisoners challenging prison conditions will have their complaints dismissed for the same reasons. But nothing in reading §1915(e)(2) requires a district court to dismiss a deficient complaint, without granting leave to amend. Grayson v. Mayview State Hospital, 293 F.3d 103 (C.A.3 (Pa.) 2002)

In Grayson, the Court held that §1915(e)(2) says nothing about when to permit amendment. And no reason existed to depart from the rule that a plaintiff whose complaint fails to state a claim or cause of action are entitled to amend their complaint unless doing so would be futile or inequitable. Id. at 111. See also Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000), (en banc); Gomez v. U.S.A.A. Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999); Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 806 (10th Cir. 1999). The reading of §1915(e)(2) only "says that a court shall dismiss a complaint. It does not say that such dismissal may be without leave to amend." Id. Lopez, 203 F.3d at 1127. "Court's responsibility is not modified in granting leave to amend." Gomez, 171 F.3d at 796; Perkins, 165 F.3d at 806. There is no sua sponte authority to

5.

dismissals. Compare, <u>Oates v. Sobolewitch</u>, 914 F.2d 428 n.5 (3d Cir. 1990) (under Fed. R. Civ. Proc. 12(b)(6) sua sponte where appropriate, but only after service of process). Congress intended the PRLA as a whole to reduce prisoner litigation, §1915(e)(2) was not necessarily meant to deter prisoners from filing lawsuits. That objective is promoted via separate provisions §1915(b), which "establishes an elaborate deferred payment schedule by which litigants may fulfill their filing obligations". <u>Santana v. United States</u>, 98 F.3d 752, 754 (3d Cir. 1996).

Hence, Rule 12(b)(6) does not countenance on judges disbelief of a complaint's factual allegations for dismissal. <u>Neitzke v. Williams</u>, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ("a well pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely"); accord <u>Swierkiewicz</u>, 534 U.S. at 514, 122 S.Ct. 992; <u>National Organization for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994); <u>H.J. Inc. v. Northwestern Bell Telephone Co.</u>, 492 U.S. 229, 249-250, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). While court's generally looks for "short plain statements of a claim showing that the pleader is entitled to relief, in order to give the defendants [sic] notice of what the claims and the grounds upon which it rests". <u>Twombly</u>, 127 U.S. 1955, 1964 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, (1957); Fed. R. Civ. Proc. 8.

The history of the rule shows that much has been considered in formulating a proper setting by which is appropriate for all cases since 1848 when after New York Statesman, David Dudley drafted it under the New York Code which required "a statement of the facts consisting of constituting the cause of action, in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." An Act to simplify and Abridge the Practice, Pleading and Proceedings of the Courts of this State, ch. 379, §120(2) 1848 N.Y. Laws pp. 497, 521. Substantially similar language appeared in the Federal Equity Rules adopted in 1912. See, Fed. Equity Rule 25 (requiring "a short and simple statement of evidence"). However, difficulty arose and its progeny required a plaintiff to plead "facts" rather than "conclusions", and distinction that proved far easier to say than apply. See Comments on Procedural Reform: Drafting Pleading Rules, 57 Colum. L. Rev. 518, 520-521 (1957). Thus, allegations that are seemingly bear can still suffice under the system that restricts a pleading to the task of general notice-giving and invests the disposition discovery process with a vital role in the preparation for trial. <u>Hickman v. Taylor</u>, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed.2d 451 (1947); see also <u>Swierkiewicz</u>, 534 U.S. at 513 n.4, 122 S.Ct. 992 (citing form 9 as a example of the simplicity and brevity of the statement which the rules contemplate); <u>Thompson v. Washington</u>, 362 F.3d 969, 970 (C.A.7 2004) (Posner, J.) ("the federal rules replaced fact pleading with notice pleading"). The New Federal Rules of Civil Procedure: The Last Phase—Underlying Philosophy, Embodied in Some of the Basic Provisions of the New Pro-

6.

cedure, 23 A.B.A.A. 976 (1937) (hereinafter Clark, New Federal Rules, Rule 8 directly responsive to difficulty. Its drafters intentionally avoided any references to "facts" or "evidence" or conclusion". 5.C. Wright & A. Miller, Federal Practice and Procedure §1216 p.207 (3d ed 2004) (hereinafter Wright & Miller). Having established cause of action under plaintiff's Background at pp.2-4. Erickson, 127 S.Ct. at 2200 n.2-4 (2007). See also Swierkiewicz, 534 U.S. at 514 ("the liberal pleading system of notice under Rule 8(a) is the starting point of a simplified system that has been adopted to focus litigation on the merits of a claim") Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008); see also Twombly, 127 S.Ct. at 1965 n.3"....

### III Discussion

**A. 42 U.S.C. §1983[8].**

In order to successfully prove an Eighth Amendment violation, a plaintiff must demonstrate that he was subjected to "cruel and unusual punishment." U.S. Const. Amend. VIII. It is well-settled that those actions which are "incompatible with the evolving standards of decency" or that impose "unnecessary and wanton infliction of pain" violate the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 102-03 (1976) (citations omitted); see Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 417 (3d Cir. 2000). The Estelle court interpreted this broad standard to mean that prison officials can be held liable for Eighth Amendment violations upon a showing of "deliberate indifference to serious medical needs of prisoners", meaning the "unnecessary and wanton infliction of pain" Id. A successful claim is when defendant operated with deliberate indifference to the claimant's serious medical condition. See id. at 106. Inmate need only prove that defendant or prison official acted with deliberate indifference, but that the deliberate indifference

---

7. If the Court under its discretion still feels plaintiff has not put defendants on sufficient notice of pleadings, pursuant to §1915(e)(2). The Court then must permit amendment under Denton, 504 U.S. 25, 34 (1992); Alston, 363 F.3d 229 (3d Cir. 2004) ("complaint that satisfies notice pleading requirements that contain short and plain statements of the claim but lack sufficient details to function as a guide to discovery was not required to be dismissed for failure to state a claim, district court should permit a curative amendment before dismissing a complaint"). This complaint bears the Court's judicial review and is not inequitable or futile. Grayson, 293 F.3d 103,108 (3d Cir. 2002)..... 8. The Court may further not that dismissal at this stage would be premature because this complaint was entered under additional constitutional statutes and laws, and not only centered under 42 U.S.C. §1983. See (mem at pp.1-3). The issue is not whether plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) ("the Court must be satisfied that no relief can be granted under any set of facts that could be proven consistent with allegations"); see also Estelle v. Gamble, 429 U.S. 97 (1976).

7

was "to a substantial risks of serious harm". Farmer v. Brennan, 511 U.S 825, 828 (1994). Deliberate indifference will only be found where "the official knows of and disregards an excessive risk to inmate health or safety". Id. at 837. Accordingly, deliberate indifference can be shown where knowledge of the need for medical care is accompanied by the intentional refusal to provide that care, or where short of absolute denial, necessary medical treatment is delayed for nonmedical reasons", as well as denial of reasonable requests for medical treatment." Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1998) (quoting Monmouth Cnty v. Lanzaro, 834 F.2d 326 (3d Cir. 1987). Such as this case . . . . . .

The Court contends that plaintiff cannot establish from his complaint and memorandum defendants relationship to his claims as "acting under color of state law" Mem at p. 4. However, the Court's assessment is incorrect and has overlooked specific facts therefrom. While the Court confirms the fifty something plus defendants and as plaintiff complaint thereto identifies each individual and official capacities. Likewise, with the amendment of Hunter, Martin-Zook, and Reeves have also been correctly identified. Thus, is enough facts to put each of the defendants on notice as to the plaintiff's claims as set forth. See plaintiff (mem at pp. 1-4). As to Judith Mellen and Janet Liban, both as the Court noted are identified correctly as president and director of Delaware Chapter of the American with Civil Liberties Union (ACLU), and Delaware Center for Justice (DCJ). In no instance has plaintiff characterized these two defendants or other defendants serving either in their individual or official capacities for (ACLU) or (DCJ) in supervisory roles under "superior respondeat liability", clothed with the authority of state law." Reichly v. Pennsylvania Dept of Agric, 427 F.3d 236, 244-45 (3d Cir. 2005). See defendant continuation sheet p. 3, N. 48-50. The same as references David Holman and Thomas Carroll, sheet p. 1, N. 6 and 11. Therefore, claims should not be dismissed as to these defendants under 28 U.S.A § 1915 (e)(2)(B) and 28 U.S.A. § 1915A(b)(1). . . ACLU and DCJ is guilty of interfering with contract, conspiracy, and breach of a fiduciary duty to name a few.

---

9. As plaintiff has stated and complaint memorandum of law varifies with its exhibits, the defendants cannot substain a reasonable excuse/explanation or other that will suffice as a legitimate penological interest over the plaintiff's Eighth and Fourteenth Amendments under "deliberate indifference", that continual daily to affect his life through episodes of pain from routinely having no pain medications and other medications for additional chronic and nonchronic conditions, and not getting doctors appointment when needed to achive adequate and stable health care. Especially, since not only has the treatment been prescribed and ordered by a competent physician. This course of treatment has been repeatedly approved as adequate medical care for the plaintiff at least four separate times since 2004, by bureau chief who finalizes all prisoner's medical treatment.

8.

B. Statute of Limitations:

As has been repeated, plaintiff finds under this issue not statute of limitations in this case. Adding that as such, the Court has not fully reviewed the claims under the applicable statutes, laws, customs or treaties involved if only seen under 42 U.S.C. §1983.[10] Moreover, plaintiff claims are not procedurally barred under the States 2 year statute of limitations as follows:

(i) 28 U.S.C. §1915(e) "differentiates from in forma pauperis suits from ordinary civil suits and is an exception to general rule that statute of limitations defense should not be raised and considered sua sponte". Erline Co. S.A. Inc v Johnson, 440 F.3d 648, 656-57 (7th Cir. 2006).

(ii) Plaintiff cites medical malpractice as one of his entitlements for relief, see Del. tit. 18 §6856 (2005). However, review of the statute must be taken context with the federal doctrine of equitable tolling and the principles of federalism and comity between state and federal courts. In identifying the applicable statute of limitations for a §1983[11] claim, courts generally use the statute of limitations for state where federal court sits. Lake v. Arnold, 232 F.3d 360, 368 (3d Cir. 2000). Despite this fact the Delaware statute of limitations applies, federal tolling doctrine may be applicable to determine whether plaintiff's federal claims are timely. Id. at 366. The federal doctrine of equitable tolling "stops the limitations from running when the date on which the claim accrued has already passed". Oshiver v Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994). The doctrine only applies to suits brought (as here) under federal civil right statutes when the statute of limitations would otherwise frustrate federal policy.

The Third Circuit has established three principles in which this equitable tolling is appropriate: (1) where defendant actively misleads plaintiff with respect to the cause of action; (2) where plaintiff has been prevented from asserting claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts claim in a timely manner but done in the wrong forum."[12] It seems as the Court has calculated plaintiff tolling statute under Delaware law for exhaustment under December 20, 2004[13]. However, when reading memorandum points in relationship to the Court's tolling assessment exhibits A, B, D-1, D-2, E-1, E-2, F, G-1, and G-2 are all to show a continual pattern. See memorandum

---

10. On plaintiff's first page of his memorandum of law under n. 1, it is specifically identified additional statutes. Pages n. 2 and 3 illustrates more statutes, laws, customs or treaties involved in this case. 11. Again, the Court is reminded that interpreting statute of limitations. It must be reviewed as well in light of plaintiff's additional statutes, laws, customs and treaties. 12. The Court only need assess the second scenario involving the plaintiff. 13. This is a correction from the Court's date, see exhibit B.

9.

p. 3 under facts through p. 9, at N. 25 ——————. Plaintiff never intentionally meant for the Court to consider these exhibits/documents as a reference point for the tolling under statute of limitations. As for each named defendants are reflected in their individual and official capacities for their participation, and/or acquaintance and knowledge to the violations. The Court should not take the material on face value without considering the facts as a whole. Likewise, the Court should note the fact that plaintiff also mentions inadequate dental treatment in exhibit G1 as part of his medical treatment argument, and thus, reserve the right to amend. Given however the Court's assessment of the issue under States tolling provisions is correct. The Court must overlook the default on the behalf of the plaintiff, as being interrupted and tuset by the defendants (DOC/DCC) and (CMS) failure to carry out the exhaustment remedy as an "extraordinary circumstance". Estelle v. Gamble, 429 U.S. at 104-05 ("prison officials manifest deliberate indifference by "intentionally denying or delaying access to medical care"). Acts or omissions by prison officials that indicate deliberate indifference to that need. Id. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (" deliberate indifference when prison officials actually knew (as here) of prisoner need but deliberately disregarded those needs."); Ruseek v. Dewey, 21 F.3d 213, 216 (8th Cir. 1994)(same); Rouse v. Plantier, 182 F.3d 192,197 (3d Cir. 1999)(same)." In this case, the defendants inactions is the same as not being able to assert claim. Morris v. Ocasio, No. 87-5149, 1989 WL 17349, at 8 (E.D. Pa. Mar. 1, 1989)(citing Childers v. Joseph, 842 F.2d 689 (3d Cir. 1988)("even if the record contains facts that might provide support for a non-movant's position, the burden is on the non-movant, not the court, to identify genuine, material factual issues"); see also Atkinson, 2000 WL 193193 at 5 n. 8 (E.D. Pa. June 20, 2000).

(iii) Under medical malpractice, the plaintiff is required to submit an affidavit of a experts opinion regarding the issue and standard of care. Ferreira v. Rancocas Orthopedic Assocs.,

14. Plaintiff was trying to illustrate a continual pattern of inadequate medical care by the defendant operating in their individual and official capacities, Noting that the documents goes back to plaintiff first treatment under the pain medication that is the crux of plaintiff's argument for adequate pain relief medications, etc., that has since been mandated as proper treatment for plaintiff's pain condition by bureau chief of prisons Was first administered by defendant Bailey on July 5, 2002, without having medical existence of any back injury except from plaintiff medical history of spinal sclerosis or spinal degenerate disease. At this point and time all x-rays continued to show allegedly, there weren't any back injuries, one year before Dr. Browns x-ray and treatment prescribed medical orders and four years before the only MRI taken. See memorandum at p. 9 (footnote n. 9) in relationship to the Exhibits as a whole reviewed by the Court. Because the defendants has deliberated continued to not carry out their ordered mandate, despite remedy approval. As an "extraordinary circumstance" invoking the plaintiff in this case. Cada v. Baxter Healthcare Corp, 920 F.2d 446, 452 (7th Cir. 1990).

10.

178 N.J. 144, 146 (2003); see also Miladys Familia v. University Hosp. of the Univ. of Med., 350 N.J. Super. 563, 569 (App. Div. 2002), Bonesmo v. Nemours Found., 253 F. Supp. 2d 801, 804 (D. Del. 2003)(quoting Green v. Weiner, 766 A.2d 492, 494-95 (Del. 2001); 18 Del. C. § 6853. However, the Court must aver to the plaintiff's argument that in this Court, the law does not require an affidavit who is deliberately indifferent to his or her patient's medical needs. See Wsed v. Integrity, Inc., 357 N.J. Super. 424 (App. Div. 2003). See also common knowledge exception. Natale v. Camden County Correctional Facility, 318 F.3d 575, 579 (3d Cir. 2003)(quoting Estate of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469-470, 734 A.2d 778, 785 (1999)("where the juror's common knowledge as lay person is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts, the jury itself is allowed to supply the application of standard of care and thus to obviate the necessity for expert testimony relative thereto."). The factual predicate for a common knowledge case is one where "the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience. Rosenberg v. Cahill, 99 N.J. 318 (1985). The plaintiff has listed doctors from (CMS) as fact witness, is sufficient to meet the Court's qualification. Therefore, the Court should not dismiss this case under 1915(e)(2)(B) and §1915A(b)(1).

C. Medical Needs:

The Eighth Amendment proscription against cruel and unusual punishment requires a prison official provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (1) a serious medical need and (2) acts or omission by prison officials that indicate deliberate indifference to that need. Id. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberate indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care. Id. Estelle, 429 U.S. at 104-105; White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). Likewise, either actual intent or recklessness will afford an adequate basis to show deliberate indifference. Estelle, 429 U.S. at 105.

With all things put forth, the case at bar is based on continuous pattern of his medical treatment being denied that is mandate by policy, medical treatment being delayed for non-medical reasons, policys that fails to address the immediate needs of the plaintiff's serious medical conditions, interference/interruption with medical treatment by non-medical sources. Natale v. Camden County Correctional Facility, 318 F.3d 575, 583 (3d Cir. 2003)(holding that Prison Health Services could be liable under §1983 for failure to have an adequate policy for addressing inmates serious medical needs). And product liability, administra-

11.

ing licensed Epilepsy drug "Neurotin" for nonregulated Food & Drug Administration usage in treating inmates as a pain reliever and antidepresint psychiatric drug.[15]

As has been now illustrated by the plaintiff, this isn't a case about inmate dissatisfication about his medical treatment (per say). Noting that plaintiff is entitled under the Eighth Amendment to "adequate medical care. Estelle v. Gamble, 429 U.S. 97 (1976). The plaintiff does not support his claims on or off what Dr. Fredderick Vandusen's inactions or actions. Dr. Vandusen is only one of Correctional Medical Service (CMS) employees who have directly treated plaintiff, serves as an administrator with acknowledgment and acquisiescence of their denial and delays in providing timely medications and denying adequate medical treatment for his serious medical needs, since 2006. In conjunction with (CMS) are (DOC), (DCC), (ACLU), and (DCA) defendant with knowledge and acquisiescence that failed to intervene with authority to do so, failing to properly train and that of state official's under the same. Heggenmiller v. Edna Mahan Corr. Inst. for Women, No. 04-1786, 128 Fed. Appx. 240 (3d Cir. 2005); Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)(quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001)(quoting Sample v. Diecks, 885 F.3d 1099, 1118 (3d Cir. 1989); Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990); City of Canton v. Harris, 489 U.S. 378, 388-92 (1989); Stoneking v. Bradford Area School Dist., 882 F.2d 720, 724-26 (3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990); and Monell v. Department of Social Servs, 436 U.S. 658, 694-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff further charges same with interfereing/interrupting with contract, and conspiracy etc. United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); Barrett v. Thomas, 809 F.2d 1151, 1155 (5th Cir. 1987)(local officials, local governments may be made liable to the plaintiff, even when not formally parties in a suit, as long as the suit is against officials in their official capacities and that public entities receive adequate notice and opportunity to respond).

---

[15.] This drug has been known at least since 2005, as not being preferred as usage in the medical community for pain relief or a psychiatric medication. It is also known to cause high blood pressure, heart trouble and a high risk of suicide. There are other relevent conditions that are still unknown, because there wasn't been any long term studies conducted on patient's having been administered the drug long term. See (mem p.11, at n. 35-36) and attached exhibit thereto marked H. Prison officials violate an inmate's rights under the Eighth Amendment when they act with deliberate indifference or reckless disregard towards an inmates health or safety, and their objectively serious, or has caused an objectively serious injury to the inmate. Farmer v. Brennan, 511 U.S. 825, 846-47, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Further, by allowing such form of treatment to exist is "incompatible with contemporary standards of decency". Carrigan v. Davis, 70 F.Supp.2d 448, 452 (D.Del. 1999) This also an Product Liability Claim under unregistered administering of (F.D.A). Brown v. Muth Cty., 2005 WL 3527244

12.

Because these issues don't simply apply to plaintiff's complaint and memorandum of law. It is the plaintiff's position to argue his claims against the Court's denial of his motion for temporary restraining order (TRO). In do so, he will prove all points. On February 1, 2008, this Court order the defendants (DOC/DCC) and (CMS) to responde to plaintiff's request in the above motion. Despite both parties not meeting the Court's directive in 20 days, the defendant's by and through counsels did respond. Deputy Attorney General, Ophelia Waters answered for the State (David Pierce and James Welch)(no affidavits in support). Mr. James E Drince answered for the defendants (CMS)(unsworn affidavit in support). Counsel informs Court that signature was unable to achieve because doctor purporting to have authored affidavit was "very ill". However, plaintiff filed a motion in opposition of the Court exceptance of the unsworn affidavit as inadmissible. Because the Court didn't entertain plaintiff's request and the relevance it possesses on this on this case.

The Court's that has undertaken review of this issue as held unsworned affidavits are inadmissible because they do not include personal knowledge. Nissho-Iwsi M.Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988); Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir. 1985), cert. denied, 475 U.S. 1107, 106 S.Ct. 1513, 89 LEd.2d 912 (1986). This is particularly prejudical to the Plaintiff since counsel reasoned that exceptance was warranted (unsworned) due to the alleged author Dr. Louise Desrosiers was out "very ill" when counsel filed their response on February 22, 2008.[16] Likewise, the defendants (CMS) and (DOC/DCC) seem to be telling two different story's regarding plaintiff's medical treatment. State defendants rests on their doctored copy of plaintiff medical records of 2006 thru January 2008 (with only certain information. While defendants (CMS) relies on its most recent dates indicating prescription orders. Both declaring continual medical treatment. The Court must also be mindful, while their exhibits and responses may alleged that plaintiff received certain medications or treatment, that does not mean that it (a) was given at that time, or (b) given at all as the plaintiff will demonstrate.

---

16. The Court is reminded that as part of his reply to the defendants entry of this unsworn affidavit informed this Court that counsel assertion was a fabrication, because Dr. Desrosiers was working everyday at the prison and he treated him on the 19th of February. See exhibit enclosed hereto believed to have been processed with plaintiff's (TRO) response, entered in a separate set of exhibits marked (TRO) as exhibit A. See Grady v. United States, 269 F.3d 913, 918 (8th Cir. 2001)("a court may, in its discretion, elect not to consider a delayed affidavit or may discount it as less trustworthy"). Not only did (CMS) submit an unsworned affidavit, but the Court accepted the presentation of a copy sworn a week later. Considering the facts, the Court has no reasonable discretion to accept anything submitted in their motion in opposition of plaintiff's (TRO) and their motion should be stricken.

13.

Defendants (CMS) now contends that their physicians are following a course of treatment to decrease plaintiff's reliance on narcotics (sic) and rely more on physiotherapy. Yet this is a direct contradiction to (CMS) medical policy. See attached herein exhibit B (as underlined at N.1. Compare to (TRO) response p. 3, at N. 6(b).[17] Defendants further goes on to list plaintiff's medications provide from November of 2006 until January 2008. According to their argument at N. 6(c), these medications are allegedly registered narcotics. However, only Vicodin that plaintiff received for 5 days and Tylenol 3 that he has been receiving for acute short-term pain relief are narcotics.[18] From the defendants information and informed exhibit entered here. There is no reasonable for the defendants (CMS) to hold such position, plaintiff has made his case of "deliberate indifference to serious medical needs". And as the result of their exposure of plaintiff to undue suffering, no more is needed. Lanzaro, 834 F.2d at 346 (citing Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976))." State defendants at N. 9 of their response suggest that defendants David Pierce and James Welch may not be held accountable to plaintiff's claims since they had "no actual knowledge or acted with reckless disregard." However, under liberal pleading standards for (pro se) plaintiffs and by Rule 8(a) along with plaintiff's cover page of memorandum of law, all defendants are sued in their individual and official capacities automatically defers knowledge to each.

In the Court's order denying (TRO) it notes that the defendants had not officially been served copies of the complaint, in essence not having adequate notice to plaintiff's action. However, the Attorney General received a copy of same, as well as (CMS) regional director Ron Moore (via) in house mail to institutional mail at the prisons infirmary/hospital when mailed to the Court. Likewise, plaintiff was unaware that he needed to plead specific facts detailing exactness to each defendant's linking them to plaintiff. Nonetheless, exhibits C and D as entered herein illustrates each knowledge of the exact nature of plaintiff's concerns

---

17. This exhibit is from Quality Assurance Monitor: Scott Altman answering plaintiff's earlier request for why he wasn't receiving diagnosed and approved medical care (mem exhibits A-C). Mr. Altman specifically notes at N. 3 that "Soma" was approved to be received but plaintiff never received it.
18. Mr. Altman further informs of the specifics to (CMS) treatment policy in general regarding patients that have his type of conditions at N. 2. Making plan that of all medications prescribed to the plaintiff, only "Soma" was for pain. The remaining medications then as now are "anti-inflammatory's" at N. 2... 19. Mr. Altman makes sure that the plaintiff understands, that it is not (CMS) practice to deny patients necessary medical care stating "our treatment programs are modified to each patient's specific needs", at N. 3. — What is demonstrated by (CMS) alleged change in policy and practice with the acknowledgment of (DOC/DCC) at the exposure of the plaintiff. A policy to treat the plaintiff with a easier and less

14.

since late 2006 and plaintiff can provide the Court with knowledge even earlier. See (TRO) exhibits. Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990)(prison official must be personally involved in, or, at the very least, aware of the alleged misconduct). The defendants further allege that physical therapy is recognized form of treatment for the plaintiff. Yet, physical therapist discontinued plaintiff's treatment in January 2008, only after 6 sessions advising him that he had done all that could be done, due to the area of his spinal conditions. Despite defendants assertions that plaintiff has been scheduled for future therapy and an additional MRI, two months later and there has been no change. See State's response at n. 9. The defendants (CMS) allege that plaintiff is receiving adequate medications. See (CMS) response at 6(d).

The Court should not be so considered of their allegation as true. Just because they have provided records. The Court should not these exhibits (a) does not adequately demonstrates what plaintiff is actually receiving. See (CMS) exhibit C to response:
   1. Robaxin, has'nt been received since February 2008 p.3;
   2. Prescriptions signed as dispensed by nursing staff when not. See (TRO) exhibit E., at notes made;
   3. Prescription orders not coinciding with plaintiff's visits or ordered days later (note date changes)
   4. Exhibit F (part of another exhibit illustrating plaintiff's February 2008, bureau chief approval of adequate medical care) shows that e.g. (CMS) was not giving plaintiff pain medication Tylenol 3 when their records declared that he was; and (b)—————

Plaintiff has had to continue to file sick calls despite the defendants allegation and not getting seen, even though they should have under emergency circumstances. See (TRO) exhibit G. If there is any doubt as to the state of the defendants mind set towards treating the plaintiff in the near future. See (TRO) exhibit H…; plaintiff received (CMS) response on April 12, 2008, regarding getting a doctors appointment. In responding in addition to all past sick-calls "you have been seen in CCC on 3-3-08. Your next CC appt is due 6-3-08."

efficious form of treatment simply because it can be administered more quickly or cheaply. West v. Keeve, 571 F.2d 158, 162 (3d Cir. 1978)(citations omitted). When prison officials deliberately prevents an inmate from receiving treatment for serious medical needs or when a prison official prohibits an inmate from gaining access to a physician so that his condition can be evaluated, he runs afoul of the Eighth Amendment's prohibition against cruel and unusual punishment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). 20. May the Court note that plaintiff was only being stretched out to elevate tension on the spine. Plaintiff was given exercises to keep tension out of back, that was all that treatment recommended.

15.

After going back and forth between medical grievances and submitting sick-calls for adequate medical care. And having had Dr. Desrosiers prescribe back to back a known muscle relaxer medication "Prestone forte" to him that caused severe side-effects. Plaintiff penned a letter to (CMS) counsel informing him of the recent events and advised that he didn't wish to receive further medical care from her at the risk of his safety and health. See (TRO) exhibit 1 as (underlined).

Your Honor, this isn't about plaintiff requesting special treatment or about not appreciating the health care he is receiving. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Harrison v. Barkley, 219 F.3d 132, 138-140 (2d Cir. 2000). This civil action is about what is expected of the defendants (via) their policy's under the DOC Inmate Reference Manual (IRM) at Chpte. 5 stating:

1. Every Offender will be provided with full range of medical services necessary to maintain good physical and mental health. These services shall include but are not limited to (a) General medical services; (b) Specialized medical services; (c) Dental services; (d) Psychiatric services; (e) Vision services. 2. Every offender will be permitted at least one hour of exercise daily at least 5 days per week, except that if the offender poses a threat to safety and security ... such exercise may be denied

This language is clear and mandatory. Anderson v. Redman, 429 F. Supp. 1105 (D. Del. 1977); Del Code Ann. tit. §6536 (1970). It is evident that the defendants actions consist of a continuous care of medical treatment that has been proven ineffective, and the defendants knows is causing plaintiff undue unnecessary pain and suffering that has been ordered to be discontinued by the (DOC) bureau chief on repeated occassions. McMillian, 503 U.S. 1, 9 (1993).____; Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) cert. denied, 486 U.S. 106 (1988); Valdez v. Warren County Correctional Dept., 2001 WL 3213925; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Berry v. CMS, 1994 Del. Super. Lexis 219, No (Del. Super. Ct. 1994) (citing Vick v. Dept. of Correction, 1993 Del. Super. Lexis 115 (Del. Super. Ct. 1993)). Thus, the plaintiff has met the threshold of proof for inmate medical claims. Estelle, 429 U.S. at 107.

The State has delegated its duty to the private person- the defendant (CMS) and physicians- the private person who is a actor for the purpose of §1983 liability. Prison officials must ensure plaintiff recieves adequate food, clothing, shelter, medical care, and exercise. Wilson v. Seiter, 501 U.S. 294, 304-05, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Arguabley, the State's definition of constitutional rights owed the plaintiff is identical to those under the federal constitution. Private physicians contracting with the State to provide medical care to prisoners is a state actor because the state owes the

16.

prisoners a constitutional duty to provide adequate medical care. West v. Atkins, 489 U.S. 42, 54-55, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The defendants et al., terms of medical care being adequately provided to the plaintiff is nothing short of "cruel and unusual punishment" in any degree. Rhodes v. Chapman, 452 U.S. 337, 345-46, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). See also Helling v. McKinney, 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (the Fourteenth Amendment, prohibits the imposition of "unnecessary and wanton infliction of pain contrary to contemporary standards of decency"). Wherefore, base on these facts plaintiffs claims of deliberate indifference to his serious medical needs under 28 U.S.C. §1915(e)(2)(B) and §1915A(b)(1), and should not be dismissed against the defendants.

D. Grievance and First Amendment Claims:

Although the Court did not characterize plaintiff claims in this section of it's order dismissing the action, First Amendment claims are the plaintiff's entitlement.[21] The complaint of failing to hear grievances regarding defendant McCarron and other grievance office employees, is a 1st Amendment claim to "denial of access to the courts." The purpose of the regulation is to put the prison officials on notice of persons claimed to be guilty of wrongdoing. Because the PLRA requires exhaustment of administrative remedies before seeking relief from a court. When that remedy is interrupted by prison officials. It amounts to interference with his access to the courts. DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000); Moss v. Mormon, No. 99-C-3571, 2000 WL 283967, 2000 U.S. Dist. Lexis 3232 at 8 n.1 (N.D. Ill. Mar. 10, 2000); Preiser, 411 U.S. at 493, 93 S.Ct. 1827; Johnson v. Garraghty, 57 F.Supp.2d 321, 329 (ED Va. 1999). State defendants contends that Law Library personnel repeated extractions of documents filed as exhibits to legal motions, etc., is not creating a "actual injury" under Lewis.[22] But if the defendants are left to their device to extract documents from the plaintiff's legal filings, the court can miss important points to his claim(s). See Spruill v. Gillis, 372 F.3d at 226 n.2 (CA.3 (Pa.) 2004), see also Lewis, 518 U.S. at 353 n.3.

The Court used Robinson v. Taylor, 204 Fed. Appx. 155 (3d Cir. 2006) in ruling that plaintiff do not possess a constitutional right to access to the court under compromised administrative exhaustment remedies, and cited Burnside v. Moser, 138 Fed. Appx. 414, 416 (3d Cir. 2005).

---

21. The Court has stated that neither Lisa Merson or Terry Hastings are not listed as defendants and only listed in plaintiff's exhibit A. However, if the Court would review the second page at n. 23 and 39 of the continuation sheets of defendants, they are clearly listed as defendants in their individual and official capacities from plaintiff cover page of memorandum of law. 22. This was never a claim about grievances copies as was alleged by the defendants.

17.

However, Robinson at 157 n.3 specifically informs that under Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (citing Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003). Holding filling of prison grievances is a constitutionally protected activity). Plaintiff's claims against grievance office personnel retaliation claims are meritorious.[23] In furtherance, to show a continuous pattern of practice. See (1RO) exhibit I-1, Mrs. Merson 2007 write up. And (1RO) exhibit K-1 of another write up by grievance office personnel Cpl. Molly Gross. Plaintiff has placed his affidavit of the incident first to demonstrate the large desparity between affidavit and write up completed six days afterwards, after plaintiff had submitted copies to State's counsel asking him to stop these actions. See (1RO) exhibit K-3 for write up report. How could plaintiff be found guilty for doing something he did and for not timely reporting to an hearing that wasn't scheduled to take place until 10 days later. Note as well Mr. McCreanor's conduct (1RO) exhibits K-4, and K-5. Working in the grievance office, he personally signed off on the write up as "shift commander" (K-3) and personally served it on plaintiff all ready completely filed in for not requesting witness or wanting to confront his accuser (K-6). Plaintiff was later found guilty acculating classification disciplinary points (K-8). In demonstrating that this conduct has also moved directly to those with charge over plaintiff see (1RO) exhibits L-1 thru L-3 of stf/Lt. Lisa Profaci retaliatory shakedown and threating to confiscate plaintiff's legal material. Certainly, these actions shows a causal link between plaintiff's exercise of his constitutional rights and an adverse action against him. Rouser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); Badcock, 102 F.3d at 274-75; Higgason, 83 F.3d at 810; Black, 22 F.3d at 1402-03; Murphy, 833 F.2d 106, 108-09.

Thus, plaintiff's First Amendment claims should also go forth under 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Plaintiff complaint meets the Court's requirements for a injunction and there is more than a likily hood of success. Pappan Enterprises Inc., 143 F.3d 800, 803 (3d Cir. 1998); American Tel. & Tel Co., 62 F.3d 1421, 1427 (3d Cir. 1997). The plaintiff is under unnecessary suffering, and money cannot atone for it. Glasco, 558 F.2d 179, 181 (3d Cir. 1977) and Fed. R. Civ. P. 65(b). Dealing with the complexity of prison administration is not at issue in determining the health and safety of the plaintiff. In Re Arthur Treacher's Franchise Litigation, 689 F.2d 1137, 1143 (3d Cir. 1982).

James Arthur Biggins (Pro Se)

---

23. Plaintiff's use of Mrs. Merson in 2001 is an example of her first charge when a grievance was filed against a law library staff member. Mrs. Merson's second charge is 2007. See (1RO) exhibit A-5 (Footnote). No statute of limitations under claim.

18.

In the United States District Court
For the District of Delaware

James Arthur Biggins,
  Plaintiff,
  vs
Governor Ruth Ann Minner, et al.,
  Defendants.

Civ. Action. No. 08-04-GMS.

## ORDER

At Wilmington this ____ day of _____, 2008, for the reasons set forth in the plaintiff's Motion For Reconsideration Of Case And Temporary Restraining Order pursuant to 28 U.S.C. §1915(e)(2)(B) and 28 U.S.C. §1915A(b)(1) under Max's Seafood ex. rel. Lou·Ann, Inc., v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). The Court Grant/Deny this instant motion based on the facts stated therein.

_____
Chief United States District Judge.

# CERTIFICATE OF SERVICE

I, __James Arthur Biggins__,
   (name)

hereby certify that two copies of the
__Motion for Reconsideration for Temporary Restraining Order__
(title of document)

were served by hand delivery/first class mail on this __30th__ day of
(circle the appropriate choice)

__April__          __2008__   upon the following
(month)          (year)

person(s):

To: Ophelia M. Waters, Esq.
Deputy Attorney General
Department of Justice
820 North French St, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400

To: James E. Drnec, Esq.
711 King Street
Balick and Balick, L.L.P
Wilmington, Delaware 19801
Attorney for Defendant
Correctional Medical Services, Inc.

Date: April 30, 2008

__James Arthur Biggins__
(signature)